# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BIOFIRE DEFENSE, LLC, a Delaware corporation; and UNIVERSITY OF UTAH RESEARCH FOUNDATION, a Utah non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FLUIDIGM CORPORATION, a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**<br><br>2:16-cv-430-RJS-PMW<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Paul M. Warner |

This suit concerns patent infringement allegations Plaintiffs Biofire Defense, LLC and University of Utah Research Foundation brought against Defendant Fluidigm Corporation. The dispute now before the court, however, is procedural: where both sides agree the Supreme Court's decision in *TC Heartland* renders venue improper in the District of Utah, should the court dismiss the case or transfer it to another district? Before the court are Plaintiffs' Motion to Transfer[1] and Fluidigm's Renewed Motion to Dismiss.[2] For the reasons given below, the court GRANTS Plaintiffs' Motion and will transfer the case to the District of Delaware. Fluidigm's Motion is DENIED.

---

[1] Dkt. 94.

[2] Dkt. 109.

# BACKGROUND

## I. Facts[3]

BioFire develops, manufactures, and sells equipment and reagents used to monitor DNA samples during polymerase chain reaction (PCR).[4] PCR allows researchers to replicate and amplify a DNA sample by using temperature cycling to heat the sample.[5] Heating the sample causes the two strands that comprise DNA to separate into single DNA strands.[6] Subsequent cooling permits specific primers—shorts strands of RNA or DNA that complement a segment of the single DNA strands—to attach to the single DNA strands.[7] A polymerase then extends the primer to replicate the original double-stranded DNA.[8]

DNA-binding fluorescent dyes are often added to the DNA sample during PCR procedures.[9] These dyes fluoresce strongly when bound to double-stranded DNA.[10] This enhances the PCR detection process by allowing researchers to monitor fluorescence while the temperature of the DNA sample is altered during the PCR process.[11] BioFire's products

---

[3] When considering a motion to dismiss, the court "accept[s] the uncontroverted allegations in the plaintiff's complaint as true and resolve[s] any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

[4] Dkt. 64 (Second Amended Complaint) ¶ 9.

[5] *Id.* ¶¶ 10–11.

[6] *Id.* ¶ 11.

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶ 12.

[10] *Id.*

[11] *Id.* ¶ 14.

implement PCR in ways that provide unique advantages, such as decreasing the total time required for PCR amplification and increasing the quality of the reaction.[12]

On January 16, 2001, the University of Utah Research Foundation obtained U.S. Patent No. 6,174,670 ('670 Patent), titled "Monitoring Amplification of DNA During PCR."[13] BioFire is the exclusive licensee of the '670 Patent, which covers many of its products and methods.[14] The '670 Patent encompasses "[a] method of analyzing nucleic acid hybridization [that includes] (a) providing a mixture comprising a nucleic acid sample to be analyzed and a nucleic acid binding fluorescent entity; and (b) monitoring fluorescence while changing temperature at a rate of $\geq 0.1°$ C./second."[15]

The Research Foundation also owns U.S. Patent No. 7,670,832 ('832 Patent), titled "System For Fluorescence Monitoring," and BioFire is also its exclusive licensee.[16] The '832 Patent covers "[a] device for performing PCR and monitoring the reaction of a sample comprising a nucleic acid and a fluorescent dye[.]"[17]

Defendant Fluidigm makes and sells products for the life science market, some of which use PCR.[18] One of these products is a system called the "BioMark," which is an analytical instrument for genetic analysis.[19] The BioMark performs PCR on mixtures containing DNA, polymerase, primers, and fluorescent dye within a vessel—also sold by Fluidigm—called an

---

[12] *Id.* ¶ 15.

[13] *Id.* ¶ 16.

[14] *Id.*

[15] *Id.* ¶ 17.

[16] *Id.* ¶ 18. A reexamination certificate was issued for the '832 Patent on September 21, 2015. *Id.*

[17] *Id.* ¶ 19.

[18] *Id.* ¶ 22.

[19] *Id.* ¶ 23.

integrated fluidic circuit (IFC).[20] Another product Fluidigm sells is the Delta Gene assay, which contains primers used to replicate the target DNA sequence.[21] Fluidigm sells the BioMark, assays, and IFCs in Utah.[22] The combination of the BioMark, IFCs, and the Delta Gene assay used to analyze a sample containing a nucleic acid and fluorescent allegedly infringes at least one claim of both the '670 Patent and the '832 Patent.[23]

## II. Procedural History

Since commencing this action on May 23, 2016,[24] Plaintiffs have twice amended their Complaint.[25] Fluidigm moved to dismiss each Complaint.[26] Plaintiffs filed their Second Amended Complaint—the operative pleading here—on March 10, 2017.[27] Before the court ruled on Fluidigm's third Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue,[28] the Supreme Court decided *TC Heartland LLC v. Kraft Foods Group Brands LLC*.[29] *TC Heartland* significantly altered the venue analysis in patent disputes.[30]

Shortly after the Supreme Court decided *TC Heartland*, Fluidigm filed a Notice of Supplemental Authority, arguing "the *TC Heartland* decision is dispositive of the entirety of

---

[20] *Id.* ¶ 27.

[21] *Id.* ¶ 28.

[22] *Id.* ¶ 33.

[23] *Id.* ¶ 31.

[24] Dkt. 2.

[25] *See* Dkt. 30 (First Amended Complaint); Dkt. 64 (Second Amended Complaint).

[26] *See* Dkts. 27, 37, & 69. In each motion, Fluidigm moved alternatively to transfer the case if the court decided against dismissal.

[27] Dkt. 64.

[28] Dkt. 69.

[29] 137 S.Ct. 1514 (2017).

[30] *See In re Micron Technology, Inc.*, 875 F.3d 1091, 1099 (Fed. Cir. 2017) ("The Supreme Court changed the controlling law when it decided *TC Heartland* in May 2017.").

4

pending Motion to Dismiss, as dismissal for lack of venue would render the other bases moot."[31] Plaintiffs initially disagreed that *TC Heartland* rendered venue improper in this district and sought to brief the matter.[32] But before the court considered *TC Heartland*'s effect on the dispute, the court stayed and administratively closed the case pending completion of reexamination proceedings involving the '670 Patent.[33]

On September 28, 2017—the day after a reexamination certificate was issued—Plaintiffs filed a Motion to Transfer.[34] Plaintiffs conceded venue was improper in this district and requested the court transfer the case to the United States District Court for the District of Delaware.[35] During a status conference, the parties agreed to re-brief Fluidigm's third Motion to Dismiss in light of *TC Heartland*.[36] The court did not, however, require Plaintiffs to refile their Motion to Transfer, which remains operative.[37]

## LEGAL STANDARD

The patent venue statute requires a plaintiff bringing a patent infringement action against a domestic corporation to file suit in a judicial district "[1] where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business."[38] With respect to the first prong, the Federal Circuit had long held a patent defendant "resided" in any judicial district where the defendant was subject to the court's

---

[31] *See* Dkt. 88 at 2.

[32] *See generally* Dkt. 89.

[33] Dkts. 91–92.

[34] Dkt. 94.

[35] *Id.* at 1–2.

[36] *See* Dkt. 105 at 11:15–21.

[37] *See id.* at 12:19–20.

[38] 28 U.S.C. § 1400(b).

5

personal jurisdiction.[39] But the Supreme Court upended that precedent in *TC Heartland*, holding "a domestic corporation 'resides' *only in its State of Incorporation* for purposes of the patent venue statute."[40]

To establish proper venue under the second prong, a plaintiff must demonstrate the alleged infringer both (1) committed past acts of infringement *and* (2) maintains a regular and established place of business within the judicial district.[41]

**ANALYSIS**

The parties devote significant portions of their briefs to whether the court may exercise personal jurisdiction over Fluidigm. But the parties agree that, post-*TC Heartland*, venue in this district is improper. The court must therefore either dismiss or transfer this case regardless of whether it can exercise personal jurisdiction over Fluidigm.[42] Accordingly, whether the court may exercise personal jurisdiction over Fluidigm is relevant only insofar as it bears on the court's decision to dismiss or transfer the case.

I.    **Transfer or Dismissal Under 28 U.S.C. § 1406(a)**

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As an initial matter, the court disagrees with Fluidigm's contention that dismissal is the "standard remedy" for

---

[39] *See, e.g.*, *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990) ("[T]he first test for venue under § 1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced.").

[40] 137 S. Ct. at 1517 (emphasis added).

[41] *See Teva Pharm. Indus. Ltd. V. AstraZeneca Pharm. LP*, No. 08-4786, 2009 WL 2616816, at *4 (E.D. Pa. Aug. 24, 2009) (noting that both the infringement and place of business prongs must be satisfied to meet § 1400(b)'s "second" test).

[42] *See* 28 U.S.C. § 1406(a).

improper venue under Section 1406(a).[43] Rather, "in most cases of improper venue the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss."[44] As other courts have persuasively concluded, "transfer is generally . . . more in the interest of justice than dismissal," and any doubts should be resolved "in favor of preserving the action."[45]

Because the Tenth Circuit has not defined the phrase "in the interest of justice" in Section 1406(a), the parties rely on *Mann v. Automobile Protection Corporation*[46] in assessing whether transfer or dismissal is appropriate.[47] The *Mann* court identified three factors to consider: "(1) whether the statute of limitations will bar Plaintiff from re-filing his complaint; (2) whether Plaintiff filed his complaint in this Court in bad faith or to harass Defendants; and (3) whether Plaintiff was forum shopping."[48] Fluidigm further argues dismissal is appropriate where a

---

[43] Dkt. 109 at 14.

[44] *Montoya v. Fin. Fed. Credit, Inc.*, 872 F. Supp. 2d 1251, 1281 (D.N.M. 2012) (internal quotation marks and citations omitted); *see also* Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3827 (4th ed.) ("Since the presumption should be in favor of transfer, dismissal should be appropriate in unusual circumstances.").

[45] *Simpson Performance Prods. v. NecksGen, Inc.*, No. 5:16-CV-00153-RLV-DCK, 2017 WL 3616764, at *8 (W.D.N.C. Aug. 23, 2017) (internal quotation marks and citations omitted); *see also Phillip Gall & Son v. Garcia Corp.*, 340 F. Supp. 1255, 1260 (E.D. Ky. 1972) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.") (internal quotation marks and citations omitted).

[46] 777 F. Supp. 2d 1234, 1244 (D.N.M. 2011).

[47] Although the parties are correct the Tenth Circuit has not defined the phrase "in the interest of justice" under Section 1406(a), it has identified factors district courts should evaluate when considering transfer under 28 U.S.C. § 1631—a substantially similar statute (including identical "in the interest of justice" language) governing transfer or dismissal where personal jurisdiction is lacking. *See Trujillo v. Williams*, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006) ("[F]actors warranting transfer rather than dismissal, at least under § 1631, include [1] finding that the new action would be time barred; [2] that the claims are likely to have merit; and [3] that the original action was filed in good faith rather than filed after plaintiff either realized or should have realized that the forum in which he or she filed was improper.") (internal citations and quotation marks omitted). Several district courts in this circuit have applied the *Trujillo* factors when considering whether transfer is appropriate under § 1406(a). *See, e.g.*, *Hanson v. Bosley and Bratch, Inc.*, No. 17-cv-01489-PAB-STV, 2018 WL 4491424, at *4 (D. Colo. Sept. 18, 2018). This approach is compelling, as the *Trujillo* factors seem equally applicable to Section 1406(a) as Section 1631. Here, however, both sides have briefed their arguments under the *Mann* decision. Accordingly, the court thinks the best approach in this case is to apply the *Mann* factors, especially given the significant overlap between the *Mann* and *Trujillo* factors.

[48] *Mann*, 777 F. Supp. 2d at 1244.

7

plaintiff commits an obvious error in filing its action in the wrong court.[49] The court evaluates in turn each of the *Mann* factors and Fluidigm's obvious error argument.

**A. Mann Factors**

1. *Whether a Statute of Limitations Bars Plaintiffs' Claims*

The court concludes this factor weighs heavily in favor of transferring the case. Fluidigm argues this factor supports dismissal because "no statute of limitations will prevent Plaintiffs from refiling in a proper venue."[50] That's true. But Fluidigm's argument fails to account for the unique role 35 U.S.C. § 286 plays in the court's calculus.

Section 286 limits recovery for any patent infringement to the six years preceding filing of the complaint.[51] Plaintiffs filed their Complaint on May 23, 2016.[52] That filing date permits Plaintiffs to recover damages incurred after May 23, 2010. But if the court dismisses this action, the six-year damages period resets, and Plaintiffs would be entitled only to damages incurred within the six years prior to the date of refiling. Thus, while Section 286 would not act as a complete bar to Plaintiffs' claims, its practical effect here could be to deprive Plaintiffs of a significant amount of potential damages.[53]

Fluidigm argues such a result "is just a consequence of [Plaintiffs'] decision to file and maintain this lawsuit in a dubious venue without filing any protective actions in districts where

---

[49] *See* Dkt. 109 at 15.

[50] *Id.* at 16.

[51] 35 U.S.C. § 286 ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.").

[52] Dkt. 2.

[53] This assumes a significant portion of the damages Plaintiffs seek were incurred between 2010 and 2013 (*i.e.*, the damages period of which Plaintiffs would be deprived if this action were dismissed). *See* Dkt. 94 at 4 ("If the Court dismisses this action instead of transferring to Delaware, BioFire will be deprived of more than one year's worth of damages.").

jurisdiction and venue would be clear (*e.g.*, Delaware or Northern California)[.]"[54] For the reasons explained below, however, the court disagrees that Plaintiffs filed suit in a "dubious" venue. Accordingly, the court finds this factor supports transfer in the interest of justice.

### 2. *Whether Plaintiffs Filed Their Complaint in Bad Faith*

Fluidigm concedes it "lacks evidence showing bad faith or an intention to harass" but nevertheless argues "the mere absence of improper conduct cannot weigh in favor of transfer in view of the other factors[.]"[55] The court disagrees. Evidence of bad faith or the absence of such evidence is the central focus of this element. Where no evidence of bad faith is present, this factor weighs in favor of transfer. Because transfer is generally the preferred remedy, cases should be transferred absent reasons to dismiss.[56] Fluidigm's admission it lacks evidence that Plaintiffs' suit was filed in bad faith or with an intent to harass is significant and supports transfer in the interest of justice.

### 3. *Whether Plaintiffs Were Forum Shopping*

The court concludes Plaintiffs did not engage in forum shopping by filing their Complaint in this court. Improper forum shopping occurs where a party chooses a forum it considers to be more favorable "without *any* legal or factual basis for doing so."[57] By contrast, if federal jurisdiction "arguably" exists, a party has not engaged in improper forum shopping.[58]

Here, Plaintiffs filed their action before the Supreme Court decided *TC Heartland*. When they commenced their suit, Plaintiffs advanced good-faith allegations this court could exercise

---

[54] Dkt. 116 at 9.

[55] Dkt. 109 at 19.

[56] *See supra* notes 44–45.

[57] *Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1192 (10th Cir. 2015) (internal quotation marks and citation omitted) (considering forum shopping in the context of Rule 11 sanctions).

[58] *See id.* at 1188.

personal jurisdiction over Fluidigm, which could have rendered venue proper under the then-applicable legal framework.[59] The court therefore cannot conclude Plaintiffs lacked a reasonable legal or factual basis for choosing this forum. This factor also supports transfer rather than dismissal.

In sum, all three *Mann* factors support the conclusion that the interest of justice favors transferring, rather than dismissing, this action.

### B. Whether Plaintiffs Committed Obvious Error

Fluidigm also maintains the court should refuse to transfer this case because personal jurisdiction and venue were obviously improper in this district when Plaintiffs initially filed suit.[60] Fluidigm asserts "a district court acts within its discretion when it finds that the interest of justice is not served by allowing a plaintiff whose attorney committed an *obvious error* in filing the plaintiff's action in the wrong court, and thereby imposed substantial unnecessary costs on both the defendant and the judicial system . . . simply to transfer his/her action to the proper court . . . ."[61] In effect, Fluidigm argues Plaintiffs' decision to file suit in this district was so obviously flawed they should be penalized for it.[62] The court disagrees.

The standard Fluidigm advances—obvious error—is a stringent one. Plaintiffs did not commit such an error by filing suit in this district before *TC Heartland* was decided. Pre-*TC Heartland*, venue in patent actions was tied to personal jurisdiction. Even with the benefit of extensive briefing, it is not now obvious that this court lacks personal jurisdiction over Fluidigm.

---

[59] *See VE Holding Corp.*, 917 F.2d at 1584.

[60] *See* Dkt. 109 at 15–18.

[61] *Id.* at 15 (quoting *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993)) (emphasis altered).

[62] "The proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one." *Id.* at 15–16 (quoting *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (Posner, J.)).

10

Nor was it obvious at the time this case was filed.[63] Plaintiffs argue Fluidigm purposefully directed its activity at Utah by directly selling three BioMarks in Utah and by continuing to sell IFCs and assays directly to customers in Utah for use with the BioMarks.[64] Even accepting Fluidigm's argument that only the 2010 BioMark sale is relevant to the court's personal jurisdiction analysis,[65] Plaintiffs maintain "the voluntary, direct sale of even one product to a consumer of a state can satisfy the requirements for exercising specific personal jurisdiction."[66] Plaintiffs thus insist a single BioMark sale is enough for the court to conclude Fluidigm purposefully directed activity at Utah.[67]

The court need not decide, however, whether the sale of a single BioMark machine in Utah could support the court's exercising personal jurisdiction over Fluidigm. It is enough that Plaintiffs advanced good-faith, plausible arguments personal jurisdiction existed in this district pre-*TC Heartland*. While Fluidigm maintains Plaintiffs invoked losing arguments, this does not render Plaintiffs' efforts obvious error. In short, the court declines Fluidigm's invitation to

---

[63] The Federal Circuit applies a three-prong test to assess specific jurisdiction where, as in Utah, the state's long-arm statute is coextensive with the limits of due process. The court must determine whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008). When assessing personal jurisdiction over out-of-state defendants in patent infringement cases, Federal Circuit precedent controls. *See Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002).

[64] *See* Dkt. 113 at 10–11.

[65] *See* Dkt. 116 at 4 n.2 (arguing the 2007 and 2008 BioMark sales are irrelevant because those sales were made outside the six-year damages period preceding the filing of this action).

[66] Dkt. 113 at 10 (quoting *Parti-Line Int'l, LLC v. Bill Ferrell Co.*, No. Civ.A. 04-2417, 2005 WL 578777 at *4 (E.D. La. Mar. 4, 2005); *see also id.* (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998)) ("[E]ven a single act can support jurisdiction, so long as it creates a substantial connection with the forum, as opposed to an attenuated affiliation.").

[67] *See* Dkt. 113 at 3–7.

penalize Plaintiffs by dismissing, rather than transferring, this action where Plaintiffs did not commit obvious error.[68]

## II. Proper Transferee District

Having concluded transferring this action is in the interest of justice, the court must now decide where to send the case. Plaintiffs request transfer to the District of Delaware.[69] Fluidigm initially represented that, if given the opportunity to renew its prior Motion to Dismiss, Fluidigm "would argue . . . the Northern District of California—where Fluidigm is headquartered, where the majority of relevant defense witnesses reside, and where activities with respect to the accused product predominantly transpired—is a more convenient venue for the parties and witnesses."[70] But Fluidigm failed to present any such argument in its Renewed Motion to Dismiss. Although each of its three prior Motions urged the court to transfer the case to the Northern District of California should the court decide dismissal was inappropriate,[71] Fluidigm's current Motion does not.[72] Fluidigm apparently made a decision to rest on its argument that dismissal is the only appropriate action here, eschewing any discussion about why the Northern District of California would be the better forum.

---

[68] Even if the court concluded Plaintiffs had committed an obvious error by filing in this district, dismissal still would not be automatically warranted. *Keaveney v. Larimer*, No. 00-2213, 2000 WL 1853994, at * 2 (10th Cir. Dec. 19, 2000) ("This is not a case in which jurisdiction and venue turned on the existence of some elusive fact about which Keaveney made an erroneous guess. Rather, the error here was obvious. *This is not to say that the district court could not have transferred Keaveney's case had it chosen to do so.* We hold only that when a plaintiff has committed an obvious error and the district court does not find that the transfer would serve the interest of justice, we will not disturb its exercise of discretion.") (internal quotation marks and citations omitted) (emphasis added).

[69] Dkt. 94 at 2.

[70] Dkt. 95 (Fluidigm's Opp'n to Plaintiffs' Mot. to Transfer) at 5.

[71] *See* Dkt. 27 at 10; Dkt. 37 at 11; Dkt. 69 at 14.

[72] *See* Dkt. 109.

Fluidigm argues only that Plaintiffs' proposed choice of the District of Delaware is further evidence Plaintiffs are still forum shopping.[73] But the District of Delaware is the only district where Plaintiffs can be sure venue is proper based on the allegations in the Second Amended Complaint. Fluidigm disputes this conclusion, arguing Fluidigm has admitted its principal place of business is in South San Francisco, "which falls squarely within the 'regular and established place of business' requirement of 28 U.S.C. § 1400(b)."[74]

But having a regular and established place of business is only one component of the two-pronged requirement for venue to be proper under Section 1400(b)'s second test. The other component requires Plaintiffs be able to allege Fluidigm also committed past acts of infringement within the judicial district in question.[75] Fluidigm has not admitted it has committed any infringing acts in the Northern District of California, nor does the Second Amended Complaint allege any infringement took place there. In short, transfer to the Northern District of California would require Plaintiffs to again amend their Complaint to allege infringing acts took place in the Northern District of California. But neither party represents that Plaintiffs can so allege.

*TC Heartland* confirmed venue is proper in any district in which the alleged infringer "resides," *i.e.*, its place of incorporation.[76] Venue is therefore proper in the District of Delaware.[77] Given the extensive motions already filed and the significant delays on the venue

---

[73] Dkt. 109 at 6.

[74] Dkt. 116 at 9.

[75] *See* 28 U.S.C. § 1400(b).

[76] *See* 137 S.Ct. at 1517.

[77] Fluidigm's incorporation in Delaware also guarantees that the District of Delaware has personal jurisdiction over Fluidigm. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (identifying place of incorporation as "paradigm" base for the exercise of personal jurisdiction).

13

issue, it was reasonable for Plaintiffs to request the court transfer the case to a district in which venue is unquestionably proper—the District of Delaware.

## CONCLUSION

For the reasons explained above, Plaintiffs' Motion to Transfer is GRANTED[78] and Fluidigm's Motion to Dismiss is DENIED.[79] The Clerk of Court is directed to transfer the case to the United States District Court for the District of Delaware.

SO ORDERED this 20th day of December 2019.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[78] Dkt. 94.

[79] Dkt. 109.